O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICOLAS GONZALEZ,<br><br>        Plaintiff,<br><br>   v.<br><br>SOUTHERN WINE & SPIRITS OF AMERICA, INC.,<br><br>        Defendant. | Case No. 2:11-cv-5849-ODW(PLAx)<br><br>**ORDER RE MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEY'S FEES [26], [27]** |

    Before the Court are Plaintiff's two motions: Motion for Attorney's Fees and Expenses; and, Motion for Final Approval of Class Action Settlement. (Dkt. Nos. 26, 27.) On February 28, 2012, the Court found the class action settlement acceptable with the exception of two terms—the attorney's fee award multiplier and *cy pres* recipients—and ordered the parties to revise the settlement appropriately. Plaintiff's counsel filed a supplemental memorandum addressing the two issues and seeks the Court's final approval of the settlement. (Dkt. No. 36.) Having considered Plaintiff's papers filed in support of the motions and Defendant's non-opposition, the Court finds as follows.

### A. *Cy pres* recipients

Upon the parties' suggestion, the Court finds the *cy pres* recipients appropriate for this case and orders the remainder of the settlement to be distributed to the Legal Aid Society Employment Law Center and Asian Law Caucus. (Khorrami Decl., Ex. A § 3.8 (Dkt. No. 28); Khorrami Decl. ¶ 12 (Dkt. No. 36-1.))

### B. *Lodestar* calculation

The *lodestar* method provides a reasonable determination of attorney's fees, and is calculated by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate.[1] *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000). In its *lodestar* analysis, Plaintiff's counsel Khorrami, LLP provides the following billing figures for its attorneys as of February 6, 2012:

| Name | Years out of Law School | Hours Billed | Hourly Rate | Total Fee (Rounded) |
|---|---|---|---|---|
| Shawn Khorrami | 17 | 22.4 | $650 | $14,560 |
| Robert J. Drexler, Jr. | 28 | 16.4 | $620 | $10,168 |
| Launa Adolph | 9 | 218.5 | $495 | $108,158 |
| Paul Mata | 5 | 245.7 | $375 | $92,138 |
| Eugene Allen | 1 | 22.1 | $300 | $6,630 |

(Khorrami Decl. ¶ 32 (Dkt. No. 28.)) And its staff as of February 6, 2012:

| Name | Position | Hours Billed | Hourly Rate | Total Fee (Rounded) |
|---|---|---|---|---|
| David Cragg | Law Clerk | 42.0 | $170 | $7,140 |
| Corina Valderrama | Law Clerk | 53.0 | $170 | $9,010 |
| Carol Miller | Paralegal | 11.4 | $155 | $1,767 |

(*Id.* ¶ 36.)

---

[1] Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the *lodestar* method to calculate the attorney's fee award. *In re Wash. Pub. Power Supply Sys Sec. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir. 1994). The Court finds that the *lodestar* method suggested by Plaintiff's counsel is more applicable in this case, and declines to consider the attorney's fee award in terms of a percentage of the overall settlement.

2

Co-counsel billed the following hours in this litigation:

| Name | Years out of Law School | Hours Billed | Hourly Rate | Total Fee (Rounded) |
|---|---|---|---|---|
| Gary Daglian | 8 | 39.5 | $375 | $14,813 |

(Daglian Decl. ¶¶ 3–4.)

Further, between February 6, 2012 and March 13, 2012, counsel spent an additional 33.6 hours as follows:

| Name | Years out of Law School | Hours Billed | Hourly Rate | Total Fee (Rounded) |
|---|---|---|---|---|
| Shawn Khorrami | 17 | 1.7 | $650 | $1,105 |
| Robert J. Drexler, Jr. | 28 | 5.8 | $620 | $3,596 |
| Launa Adolph | 9 | 22.4 | $495 | $11,088 |
| Paul Mata | 5 | 3.7 | $375 | $1,388 |

(Khorrami Decl. ¶¶ 4–5 (Dkt. No. 36-1.))

Finally, counsel indicates that an additional 20 hours are required to administer the settlement after March 13, 2012 at an average rate of $500, for a total of $10,000. (*Id.* ¶ 6.)

Thus, the *lodestar* calculation is $291,559, which represents 724.6 hours at an average rate of $402.37 per hour.[2]  Upon reconsideration, and despite its previous findings, the Court finds this amount excessive.

Plaintiffs initiated this case in Los Angeles County Superior Court on May 26, 2011.  Defendants removed the case to Federal Court on July 15, 2011.  On October 28, 2011, the parties stipulated to class certification, which the Court granted three days later.  On November 23, 2011, Plaintiff filed a motion for preliminary approval of the settlement, which the Court granted on November 23, 2011.  By all

---

[2] The Court notes that counsel's calculations are incorrect.  Counsel correctly stated that the *lodestar* was $291,561 ($2 difference from the Court's calculation), but incorrectly claimed that this represented 665 attorney and staff hours.  (Supp. Mem. 3).

3

indication, the case was settled and effectively over by the end of November. No substantive motions were ever filed in this case.

### 1. *Counsel's expended hours is unreasonably high*

Based on this case history, the Court must inquire whether the 724.6 hours were reasonably expended in this litigation, taking into account the following factors: "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation . . . (4) the results obtained, and (5) the contingent nature of the fee agreement." *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996).

What strikes the Court is the overall excessive billing in an unremarkable case, which had no substantive motions, and was an easy victory for the Plaintiff. (*See e.g.*, Khorrami Decl. ¶ 32 (Dkt. No. 28) (claiming 218.5 hours at a rate of $495 for Launa Adolph and 245.7 hours at a rate of $375 for Paul Mata.)) This case concerned straightforward allegations of unpaid wages and rest periods, which the parties settled within six months. Counsel's unfettered billing of nearly $300,000 (without any multiplier) is a windfall under the circumstances. The Court does not believe that a typical law firm, on a hourly basis, would have charged a client nearly as much for a similar employment suit.

First, although the Court recognizes that some discovery was necessary, the Court questions whether it was necessary to review over "49,000 pages" of discovery documents or interview "more than 70 Class Members," when the issue in this case was whether Defendant's employees were properly paid and given the required rest periods. (*Id.* ¶¶ 5–6.) Nevertheless, the Court finds a relatively meager amount of discovery work performed in this case, which consisted of: 34 document requests and 19 interrogatories propounded by Plaintiff; 38 document requests propounded by Defendant resulting in Plaintiff's production of 430 pages of documents; a deposition of Plaintiff Gonzalez; and a two-day 30(b)(6) deposition of Defendant; and signed declaration from 33 Class members. *Id.* ¶¶ 5–7. Based on this quantity of discovery,

the Court finds that a reasonable amount of time required to perform this work would have been about 150 hours.

Second, the Court notes that the vast majority of costs were incurred between mid-September 2011 to October 2011. This strongly suggests that the bulk of counsel's time spent on this case was not the full six month mentioned above, but only for a span of one and a half months. (Khorrami Decl., Ex. C (Dkt. No. 28.))

Third, counsel states that since February 6, 2012 when it filed the instant motion, it spent an additional 33.6 hours at a rate of $511 an hour, totaling $17,177. Yet, all that occurred between February 6, 2012 to date was that the Court ordered the parties to revise the *cy pres* recipients and denied the attorney's fee multiplier. (Dkt. No. 33.) The vast majority of the 33.6 hours spent resulted in a supplemental memorandum (with accompanying documents), which was used to argue that counsel was entitled to higher attorney's fees. These hours cannot be construed to be for the benefit of the class and should be significantly reduced.[3]

Fourth, the Court is not convinced that the expended hours were necessary, given Plaintiff's expertise and the minimal work required. Counsel has shown that it is quite the expert through its recitation of over 20 representative cases, where it has obtained total class fund settlements in excess of $400M. (Khorrami Decl. ¶¶ 25–26 (Dkt. No. 28.)) Given counsel's expertise, they are expected to not do things from scratch, e.g., drafting the stipulation and settlement, preparing declarations, and writing the instant motions. Indeed, in this case, the only noteworthy papers filed by

---

[3] Similarly, the work expended towards counsel's motion for attorneys fees was not for the benefit of the class. (Dkt. No. 26.) The Court must act as the fiduciary for the class plaintiffs and scrutinize counsel's efforts when directed solely for its own interest. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) ("[P]laintiffs' counsel, otherwise a fiduciary for the class . . . becomes a claimant against the fund created for the benefit of the class."). Courts have routinely cut attorney hours when expended towards motions for attorney's fees. *See Johnson v. Credit Int'l, Inc.*, No. C-03-100 SC, 2005 U.S. Dist. LEXIS 21513, at *8 (N.D. Cal. July 28, 2005) (reducing attorney hours spent for a motion for attorney's fees from 8.9 to 2.3).

counsel with the Court are: the complaint (Dkt. No. 1); a joint Rule 26(f) report (Dkt. No. 12); a stipulated protective order (Dkt. No. 17); a class certification (Dkt. No. 22); a motion for preliminary approval of settlement (Dkt. No. 24); and the two instant motions (Dkt. Nos. 26, 27).[4]  An experienced class action attorney will have samples of these common class action documents—in this instance, counsel should have over 20 cases worth of samples.  Any significant time spent on this litigation should have been directed towards specific facts and situations that significantly differed from those of a run-of-the-mill employment class action suit.  Yet, this case appears to be just another such run-of-the-mill employment class action suit.

Counsel's high billable rates reflects its expertise.  In other words, the higher an attorney's hourly rate, the faster and more efficiently he is expected to do the same amount of work.  It would be double accounting to allow counsel to bill both a high hourly rate for its expertise, and then a high number of hours (reflecting lack of expertise) for a particular quantity of work.

Although counsel has not submitted any detailed billing statements to assist the Court in its calculation, the Court believes that these detailed billing statements would not have altered this Court's judgment.  The Court presumes these billing statements are nothing more than pages of entries of tasks performed in connection with this litigation.  A billing statement reflecting discrete hours expended will not persuade the Court that the work was warranted anymore than the information provided in the tables provided above.[5]

Accordingly, the Court cuts the billable hours by 55%, thereby reducing the *lodestar* hours from 724.6 to 326.1.  *See Andrews v. Lawrence Livermore Nat'l Sec., LLC*, No. C 11-3930 CW, 2012 U.S. Dist. LEXIS 5571, at *8–11 (N.D. Cal. Jan. 18,

---

[4] The Court gives Plaintiff's counsel the benefit of the doubt that they prepared all of these papers themselves, without the assistance of Defendant's counsel.

[5] Further, much of the details of the time entries would be redacted for privilege, thereby leaving nothing more than a table of billed hours.

2012) (the court cutting 38% of the hours claimed); *Montoya v. Creditors Interchange Receivable Mgmt., LLC*, CV 10-3037 PSG (Ex), 2011 U.S. Dist. LEXIS 64611, at *6–11 (C.D. Cal. June 17, 2011) (the court cutting 43% of the hours claimed).

       2.      *Counsel's hourly rate is high*

To ascertain whether the hourly rate is reasonable, a comparisons should be made based on the prevailing rates in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Although Plaintiff argues that counsel's hourly rates are well below the market rate and below those suggested by the Laffey Matrix, the Court is not convinced that counsel's rates reflect those of its peers in employment law practice.

For instance, Mr. Daglian is co-counsel to Khorrami. (Daglian Decl. ¶ 2.) He is head of Daglian Law Group, APLC and has eight years of experience in various legal areas, including employment law. (*Id.*; Daglian Law Group, APLC, http://www.daglianlaw.com.) Mr. Daglian's billable rate is $375. (*Id.* ¶ 4.) In contrast, Ms. Adolph is an associate at Khorrami with nine years of experience, but her billable rate is $495. (Khorrami Decl. ¶ 32 (Dkt. No. 28.)) As a further comparison, Mr. Mata, an associate at Khorrami with five years of experience, has a billable rate of $375. *Id.*

The Court finds no reason, and counsel has not justified, why Mr. Daglian's billable rate is significantly lower than that of a similarly experienced associate at Khorrami. Accordingly, the Court finds that Ms. Adolph billable rate should be downwardly adjusted to $375 to match that of Mr. Daglian, reflecting a 24.2% reduction from $495. Further, the Court deems this adjustment should logically apply to all attorneys and staff at Khorrami, as the above discussion suggests that all of Khorrami's rates generally exceed market rates.

Thus, the composite hourly rate of $402.37 is reduced by 24.2% to $304.83 per hour. The Court finds that this average hourly rate of $304.83 for attorneys and staff

is commensurate with counsel's experience. Therefore, Plaintiff's *lodestar* figure is 326.1 hours multiplied by $304.83 per hour, totaling $99,395.11.

**C.     Attorney's fee multiplier**

In its previous order, the Court found the multiplier unnecessary given the circumstances of the case. (Dkt. No. 33.) The Court reiterates that finding.

After making the customary *lodestar* calculation, a court may assess whether it is necessary to adjust the presumptively reasonable *lodestar* figure on the basis of 12 factors. *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). These 12 factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.*

Counsel argues that the Court abuses its discretion if it fails to apply a risk multiplier when "(1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky." *Fishel v. Equitable Life Assurance Soc'y of the United States*, 307 F.3d 997, 1008 (9th Cir. 2002). The Court finds counsel's argument misleading, as subsequent cases appear to have superseded this analysis.

In *Perdue*, the Supreme Court noted that enhancements are awarded only in rare and exceptional circumstances and "may not be awarded based on a factor that is subsumed in the *lodestar* calculation." *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1673 (2010). For example, *lodestar* factors such as the novelty and complexity of a case,

and quality of counsel are reflected in counsel's hourly rate. *Id.* Additionally, whether the fee was fixed or contingent is no longer a valid enhancement factor. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 n.7 (9th Cir. 2011).

The Court finds counsel's arguments for enhancement lacking and intended to duplicate factors incorporated into their billable rates. First, counsel argues that they "would not have taken this case if they knew they would be limited to recovery of their *lodestar* calculation in the event they were successful." (Supp. Mem. 4.) Yet, the Court notes that: counsel represented that it "does not perform much hourly non-contingent work"; counsel's practice mostly consists of class action lawsuits; and Khorrami only has two other class action lawsuits pending. (Khorrami Decl. ¶ 10 (Dkt. No. 36-1); Khorrami Decl. ¶ 25–26 (Dkt. No. 28.)) Putting these observations together, the Court finds that it is more likely than not that counsel was more than happy to take the instant contingency case, since it is the typical case that they litigate, and this is especially true since counsel did not have many other cases to work on.

Counsel also argues that the case was taken on contingency and the case was risky—thereby entitling them to a fee enhancement. As discussed above, the distinction between a contingency arrangement and a fixed fee arrangement does not merit an enhancement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942 n.7. As for risk, every case is risky—"the risk of loss in a particular case is a product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The first factor, though not reflected in the *lodestar*, should not be applied because it would encourage nonmeritorious claims to be brought due to the enhancement incentive. *Id.* at 563. The second factor, is already reflected in the *lodestar*, either in the hourly rate or in the number of hours expended; granting an enhancement would "amount to double counting". *Id.* at 562–63.

Counsel may have raised other arguments to support enhancement, but it did not. Other reasons for enhancement may include unanticipated delay in payment or in

situations where the hourly rate employed in the *lodestar* calculation does not adequately measure the attorney's true market value. *Perdue*, 130 S. Ct. at 1674–75. But counsel has not alleged an unanticipated delay in payment. The fact that this case was accepted on contingency necessarily meant a delay in payment. Nonetheless, this delay cannot be claimed to be unanticipated, since every contingency case means a payment upon resolution. Further, this case was settled quickly. As for counsel's true market value, enhancing the *lodestar* to reflect an inadequate billable rate contradicts the Court's above finding that the claimed billable rates were already excessive.

Thus, the Court denies counsel's request for a multiplier of 1.5 and deems that the *lodestar* figure, without an enhancement multiplier, is the appropriate measure of attorney's fees in this case.

**D.    Miscellaneous**

The Court finds the remaining terms of the settlement acceptable.

**E.    Conclusion**

For the reasons stated above, the Court approves the settlement of this class action suit subject to the changes ordered above.

Accordingly, Class Counsel is awarded attorneys' fees in the amount of $99,395.11. Class Counsel will be reimbursed for its costs incurred in connection with this litigation not to exceed $10,000. Plaintiff Gonzalez is awarded a service payment in the amount of $5,000 for his effort on behalf of the Class. The Claims Administrator is awarded its actual fees and expenses not to exceed $15,700. The *cy pres* recipients for the settlement will be Legal Aid Society Employment Law Center and Asian Law Caucus. This case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

March 29, 2012

_____
HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE