O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| NICOLAS GONZALEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHERN WINE & SPIRITS OF AMERICA INC.; DOES 1–100, inclusive,<br><br>Defendants. | Case No. 2:11-cv-05849-ODW(PLAx)<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES [51]** |

## I. INTRODUCTION

After the parties reached a settlement of this class-action lawsuit, Defendant Southern Wine & Spirits of America, Inc. ("SWS") agreed to pay $1.75 million, including up to $437,500 in reasonable attorneys' fees. Plaintiff then moved for an attorneys'-fees award. The Court reduced the billed hours and hourly rates factoring into the lodestar calculation and awarded class counsel $99,395.11.

Plaintiff appealed the Court's Order, and the Ninth Circuit Court of Appeals reversed and remanded for recalculation. Following extensive review of class counsel's billing records and arguments, the Court now awards a total of $423,494.57 in reasonable attorneys' fees, which includes the amount the Court approved prior to Gonzalez's appeal. The Court thus **GRANTS IN PART** Plaintiff's Motion for Attorneys' Fees. (ECF No. 51.)

## II. FACTUAL BACKGROUND

On July 15, 2011, Plaintiff Nicolas Gonzalez filed this putative wage-and-hour class-action lawsuit against SWS in Los Angeles County Superior Court. (Not. of Removal Ex. A.) SWS subsequently removed this case to this Court, invoking jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). (ECF No. 1.)

On October 27, 2011, the parties mediated the action and reached a settlement. (Stip. re. Conditional Cert. ¶¶ 4–5.) Gonzalez then moved for final class-action settlement approval, noting that SWS had agreed to pay $1.75 million to class members, including up to $437,500 in attorneys' fees. Plaintiff also moved for, among others, the full $437,500 in attorneys' fees based on a lodestar figure of $264,384 for 671 attorney and staff hours. (ECF No. 26.) In addition, Gonzalez sought a 1.65 multiplier, thereby bringing this total attorneys'-fees request to to the $437,500 maximum. SWS did not oppose that Motion or Gonzalez's Motion for Attorney Fees and Expenses. After further briefing, Gonzalez updated his attorneys'-fees request to $291,559 based on 724.6 hours worked plus a multiplier.

On March 29, 2012, the Court granted final class-action settlement approval. (ECF No. 37.) But the Court reduced the attorneys'-fees award to $99,395.11. The Court found that class counsel had expended an unreasonably high number of hours on the case given its rather short litigation timeline. The Court accordingly cut the billable hours by 55 percent to 326.1 hours. Also finding that class counsel's hourly rates were unreasonably high, the Court cut the composite hourly rate of $402.37 by 24.2 percent to $304.83 per hour. Finally, the Court declined to apply any multiplier.

After Gonzalez appealed the Court's Order, the Ninth Circuit Court of Appeals reversed and remanded this Court's decision. (ECF Nos. 45, 47.) The Ninth Circuit made several findings. First, the court held that California substantive law applies to this action since the Court exercised diversity jurisdiction under CAFA. Second, this Court must consider all hours reasonably spent by class counsel pursuing its fee award. The court also held that this Court must take into account the contingency

nature of the case in determining the appropriate lodestar multiplier.  Fourth, the Ninth Circuit held that this Court abused its discretion in not making a finding as to the reasonable hourly rates of each attorney and not considering other evidence in the record of reasonable hourly rates in the community.  Lastly, the court found that this Court's lodestar-hour reduction was selected arbitrarily.

On April 14, 2014, Gonzalez filed a renewed Motion for Attorney Fees and submitted updated billing records. (ECF No. 51.)  Plaintiff again seeks $437,500 in attorneys' fees, but this time the amount is based on 902.6 attorney and staff hours, a purported lodestar figure of $372,167, and a 1.18 multiplier.  SWS does not oppose the Motion.  That Motion is now before the Court for decision.

### III.   DISCUSSION

**A.   Governing law**

As the Ninth Circuit held, California substantive law applies to the determination of the attorneys'-fee award in this case, as this Court exercised diversity jurisdiction under CAFA over the action. *See Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

**B.   Entitlement to fees**

Gonzalez argues that class counsel is entitled to reasonable attorneys' fees under California Labor Code section 1194 and California Code of Civil Procedure 1021.5.  Neither this Court nor the Ninth Circuit has concluded otherwise.  The Court therefore agrees with Gonzalez.

**C.   Lodestar calculation**

Under California law,

> [T]he primary method for establishing the amount of "reasonable" attorney fees [in fee-shifting cases] is the lodestar method.  The lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate.  Once the court has fixed the lodestar, it may increase or decrease that amount by

|   |   |
|---|---|
| 1 | applying a positive or negative 'multiplier' to take into account a variety |
| 2 | of other factors, including the quality of the representation, the novelty |
| 3 | and complexity of the issues, the results obtained, and the contingent risk |
| 4 | presented. |

*Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (Ct. App. 2000). Since Gonzalez has invoked Labor Code section 1194 and Code of Civil Procedure section 1021.5 as the bases for class counsel's fee award, he has established that this is a fee-shifting case. The lodestar calculation thus guides this Court's analysis of the appropriate fee award.

### 1. *Reasonable hourly rates*

In employing the lodestar calculation, the California Supreme Court has approved of using prevailing hourly rates as the basis for assessing the reasonable hourly rate in a particular action. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). The Supreme Court also stated that a court may adjust a fee award based on several factors, including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Id.*

Gonzalez requests the following hourly rates for the attorneys and staff that worked on this action:

| **Name** | **Position** | **Years out of Law School** | **Billed Hourly Rate** |
|---|---|---|---|
| Shawn Khorrami | Attorney | 19 | $650 |
| Robert J. Drexler, Jr. | Attorney | 30 | $620 |
| Launa Adolph | Attorney | 11 | $495 |
| Gary Daglian | Attorney | 10 | $375 |
| Paul Mata | Attorney | 7 | $375 |
| Eugene Allen | Attorney | 4 | $300 |

| Corina Valderrama[1] | Attorney | 3 | $300 |
|---|---|---|---|
| Corina Valderrama | Law Clerk | n/a | $170 |
| David Gregory Cragg | Law Clerk | n/a | $170 |
| Carol Miller | Paralegal Manager | n/a | $155 |

The Court finds that these hourly rates are reasonable in light of Khorrami's Declaration, the *Laffey* matrix,[2] the 2012 National Law Journal Billing Survey, this Court's own experience in awarding other attorneys' fees, and the trial-court awards in other cases cited by Gonzalez.

*2.     Reasonable billed hours*

As the Ninth Circuit recognized, the California Supreme Court has held that an attorneys'-fees award "should ordinarily include compensation for *all* the hours *reasonably spent*, including those relating solely to the fee." *Ketchum*, 24 Cal. 4th at 1133.

The Court has comprehensively reviewed class counsel's billing records and discovered that each attorney or staff member engaged solely in blockbilling. That is, the associates did not enter multiple line-items per day establishing the work they performed; they simply made one composite entry per day with numerous tasks listed in each. While blockbilling is not objectionable per se, it is "a risky choice since the burden of proving entitlement to fees rests on the moving party." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1325 (Ct. App. 2008). What's more, the trial court "may properly reduce compensation on account of any failure to maintain

/ / /

---

[1] Valderrama initially worked as a law clerk but then worked as an associate once she was admitted to the State Bar of California.

[2] Judge Rawlinson wrote an opinion concurring in the Ninth Circuit's remand order, stating that she "do[es] not consider the *Laffey* matrix to be evidence of hourly rates in the local community." *Gonzalez v. S. Wine & Spirits of Am., Inc.*, No. 12-55808 (9th Cir. Feb. 19, 2014) (Rawlinson, J., concurring in the result). While the Court finds that class counsel's hourly rates are reasonable in part due to comparison to the *Laffey* matrix, the Court does not rest its finding on this ground alone.

appropriate time records." *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1020 (Ct. App. 2001).

Class counsel's blockbilling has obscured the Court's ability to accurately determine whether the attorneys actually spent each block of hours on the several items enumerated or whether they veered into independent matters. The generic labels affixed to many of the descriptions do little to assuage the Court's concerns that some of the time might be—intentionally or not—padded. In fact, the California Supreme Court has emphasized that "trial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." *Ketchum*, 24 Cal. 4th at 1132.

For example, attorney Launa Adolph blockbilled every day she worked on the case for a total of 374.0 hours. Several entries give the Court pause. On August 9, 2011, Adolph billed 5.5 hours for nine separate items all entered together. There is no way to tell how much time was spent on each discrete item. On October 17, 2011, she billed 9.4 hours for "Prepare for 30(b)(6) depos; review and revise PCM declarations – R. Altadonna, A. Garcia, J. Merlini, H. Torneo." This would mean that Adolph worked, for example, from 9:00 am to 6:24 pm without taking any sort of break or working on any other matters. Even worse, Adolph billed 15.3 hours the next day for "Review P's depo transcript; prepare for 30(b)(6) depos; review PCM declarations [of 21 putative class members]." Again, that would mean that she worked, say, from 9:00 am to 12:18 am the next day—all without any break or switching to another case. It is hard to imagine someone so efficient that they can go an entire day without a single break.

There are other problems besides blockbilling. Some of the entries strike the Court as excessively high in light of the nature of the line-items described. As soon as Corina Valderrama became an attorney, she billed 6.3 hours for "Draft TOC [table of contents]/TOA [table of authorities] for opening brief, cite check, cross reference citations and cited testimony." Modern word-processing programs have features that

automatically generate such tables, and it is unclear what exactly the "checking" entailed. Other programs such as WestCheck will automatically check case citations in a matter of seconds. The Court thus reduces this 6.3-hour entry to 4.0 hours without any further adjustment for rest time.

Law clerk David Gregory Cragg spent a total of 8.3 hours between September 28 and 30, 2011 doing "Legal research re: certification of off the clock claims." Khorrami makes clear in his deposition that his firm specializes in class-action litigation—especially wage-and-hours claims. It is therefore curious that the firm would permit a law clerk to extensively bill for research that likely exists in the firm's previous motions, briefs, and other documents. The Court accordingly adjusts these entries to a total of 6.0 hours without any further break adjustment.

Under California law, class counsel bears the burden of proving that it expended a reasonable number of hours on this case and kept accurate records to reflect those hours. *Christian Research Inst.*, 165 Cal. App. 4th at 1325. The terse billing records present the Court with the impossible task of somehow assigning non-arbitrary adjustments to the entries to reflect the lack of credibility that such blockbilling demonstrates. The Court finds that a 30-minute break every five hours, an additional 30-minute meal break after 10 hours, and a 10-minute rest break every four hours (0.16 hours) accurately reflects a reasonable number of hours worked. These figures are consistent with California labor law—the same law class counsel sought to vindicate on behalf of the class members in this and myriad other actions. *See* Cal. Lab. Code § 512(a); Cal. Code Regs. tit. 8, § 11040(12)(A) (setting rest-break standards for employees in professional industries).[3]

/ / /

/ / /

---

[3] While rest breaks normally count as hours worked for an employee's wage purposes, Cal. Code Regs. tit. 8, § 11040(12)(A), the amount billed to a client or recording on a particular client matter presents a different issue. Certainly a client does not have to pay for an attorney's relaxation period even though the firm would still have to pay the attorney for that time.

| Name | Billed Hours | Adjusted Hours | Hourly Rate | Line Total |
|---|---|---|---|---|
| Shawn Khorrami | 31.7 | 30.22 | $650 | $19,643.00 |
| Robert J. Drexler, Jr. | 30.7 | 30.04 | $620 | $18,624.80 |
| Launa Adolph | 374 | 360.1 | $495 | $178,249.50 |
| Gary Daglian | 39.5 | 37.86 | $375 | $14,197.50 |
| Paul Mata | 259.7 | 246.38 | $375 | $92,392.50 |
| Eugene Allen | 22.1 | 22.1 | $300 | $6,630.00 |
| Corina Valderrama | 32.3 | 30.16 | $170 | $5,127.20 |
| Corina Valderrama | 53.0 | 49.72 | $300 | $14,916.00 |
| David Gregory Cragg | 42.0 | 37.56 | $170 | $6,385.20 |
| Carol Miller | 17.6 | 17.6 | $155 | $2,728.00 |
| **Totals** | 902.6 | 861.74 | n/a | $358,893.70 |

It is certainly not the Court's intention to split hairs over each of class counsel's billing entries. But through their previous motion and appeal, class counsel has made it clear that they want the maximum attorneys'-fees amount possible. They bear the burden of proving that they are entitled to that amount, and cursory entries, blockbilling, and inefficiency do not satisfy that burden. The Court therefore adjusts each attorney and staff member's billing as outlined in the chart above.

*3.     Multiplier*

The Ninth Circuit directed this Court to consider the contingency nature of this action in assessing which multiplier to apply to the lodestar figure. California law recognizes that attorneys should receive a multiplier when they take a case on a contingency basis as an incentive to encourage attorneys to take such cases. *Ketchum*, 24 Cal. 4th at 1132–33.

Gonzalez requests that the Court apply a 1.18 multiplier, taking into account the contingent nature of the case and the delay in class counsel receiving its full fee award. The Court finds that the 1.18 figure is reasonable in light of other California cases, the Ninth Circuit's remand order in this case, and the amount previously

requested by class counsel. Applying the 1.18 multiplier, the Court therefore awards a total of **$423,494.57** in attorneys' fees based on an initial lodestar figure of $358,893.70—or $324,099.46 over the amount the Court awarded prior to Gonzalez's appeal.

### D.   Common-fund calculation

Alternatively, Gonzalez argues that class counsel is entitled to $437,500 in attorneys' fees based on 25 percent of the $1.75 million settlement amount under California's common-fund theory.

In *Serrano v. Priest*, 20 Cal. 3d 25 (1977), the California Supreme Court held that "when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorney's fees out of the fund." *Id.* at 34. But several California appellate courts have since questioned the validity of awarding attorneys' fees as a percentage of the common fund. *See, e.g.*, *Lealao*, 82 Cal. App. 4th at 27 ("Prior to 1977, when the California Supreme Court decided *Serrano III,* California courts could award a percentage fee in a common fund case. After *Serrano III,* it is not clear whether this may still be done."); *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1809 (Ct. App. 1996) ("The award of attorney fees based on a percentage of a 'common fund' recovery is of questionable validity in California . . . .").

Gonzalez cited several cases in which federal district courts awarded attorneys' fees as a percentage of the common fund. But all of those cases rested upon federal—not California—case law authorizing such an award. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491–92 (E.D. Cal. 2010) (citing to the United States Supreme Court's decision in *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), in which the Court reviewed common-fund attorneys'-fees awards under federal law); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG(BLM), 2010 U.S. Dist. LEXIS 53416, at *21–22 (S.D. Cal. Jun. 1, 2010) (applying federal common-fund

law); *Romero v. Producers Diary Foods, Inc.*, No. 1:05cv0484 DLB, 2007 U.S. Dist. LEXIS 86270, at *6–10 (E.D. Cal. Nov. 14, 2007) (same).

This Court did not previously grant class counsel attorneys' fees as a percentage of the $1.75 million settlement fund, and the Ninth Circuit did not chime in on the issue. In light of current California law and the procedural history of this case, the Court finds that it is not appropriate to calculate the reasonableness of the attorneys' fees as a percentage of the common fund.

## IV.  CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** Plaintiff's Motion for Attorneys' Fees in the amount of **$423,494.57**.  (ECF No. 51.)  Any amount remaining from the $1.75 million settlement fund shall be distributed equally to the Legal Aid Society Employment Law Center and Asian Law Caucus as *cy pres* recipients. The Clerk of Court shall close this case.

**IT IS SO ORDERED.**

April 24, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**